UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICOLE M. SALERNO,

    Plaintiff,

v.                                          Case No.:  2:19-cv-29-FtM-NPM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER**

Plaintiff seeks judicial review of the final decision of the Social Security Administration that found Plaintiff's benefits ceased on May 1, 2014. The Commissioner of the Social Security Administration filed the Transcript of the proceedings (referred to as "Tr." followed by the appropriate page number). Pursuant to the Scheduling Order, Plaintiff—proceeding without counsel—filed a memorandum in opposition (Doc. 31) and a supplemental filing (Doc. 33); and the Commissioner filed a memorandum in support of the Commissioner's decision (Doc. 32). As discussed in this opinion and order, the decision of the Commissioner is affirmed and the request to remand pursuant to Sentence Six is denied.

## I. Social Security Act Eligibility and the ALJ Decision

### A. Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[1] The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[2]

### B. Procedural History

On March 11, 2010, the State agency found Plaintiff disabled beginning on January 1, 2007. (Tr, pp. 11, 198). The State agency also recommended review in three years. (Doc. 32, p. 1; Tr., p. 198). On May 12, 2014, after a review, the State agency found Plaintiff no longer disabled due to medical improvement. (*Id.*, pp. 203-205). On review by a disability hearing officer, the State agency continued to find Plaintiff not disabled. (*Id.*, pp. 218-221, 226).

Plaintiff requested a hearing before an Administrative Law Judge. (*Id.*, p. 232). Administrative Law Judge Charles J. Arnold ("ALJ") held a hearing on December 19, 2017. (*Id.*, pp. 177-196). The ALJ issued an unfavorable decision on

---

[1] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[2] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

January 25, 2018, finding Plaintiff's disability ended on May 1, 2014, and she has not become disabled again since that date. (*Id.*, pp. 11-26).

On November 23, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.*, pp. 1-5). Plaintiff then filed a Complaint (Doc. 1) with this Court on January 16, 2019, and the case is ripe for review.

### C.     Summary of the ALJ's Decision

Generally, an ALJ follows a five-step evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. But when the issue is cessation of disability benefits, then the ALJ must follow an eight-step evaluation to determine if a plaintiff's disability benefits should continue. *See* 20 C.F.R. §§ 404.1594(f), 416.994(b). The ALJ sets out the eight-step evaluation process in detail and the Court adopts and incorporates it here. (Tr., pp. 12-13).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage,

the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

In this matter, the ALJ found the most recent favorable medical decision finding Plaintiff disabled is dated March 11, 2010, and used this decision as the "comparison point decision" or "CPD." (*Id.*, p. 13). At the time of the CPD, the ALJ characterized Plaintiff's medically determinable impairment as: "bipolar disorder." (*Id.*).

At step one, the ALJ found through the date of decision that Plaintiff had not engaged in substantial gainful activity. (*Id.*). From the medical evidence since May 1, 2014, the ALJ characterized Plaintiff's medically determinable impairments as bipolar disorder and intellectual disorder, and further found these are Plaintiff's current impairments. (*Id.*).

At step two, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1525, and 404.1526) since May 1, 2014. (*Id.*, p. 14).

At step three, the ALJ found medical improvement occurred on May 1, 2014. (*Id.*, p. 18). And the ALJ found at step four that this medical improvement related to Plaintiff's ability to work because Plaintiff's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. (*Id.*).[3] At step six, the ALJ found Plaintiff continued to have a severe impairment or combination of impairments since May 1, 2014. (*Id.*).

At step seven, the ALJ arrived at the following RFC:

> Based on the impairments present since May 1, 2014, the claimant has had the residual functional capacity to perform a full range of work at all exertion levels but with the following non-exertion limitations: the claimant can work at only low stress work defined as follows. The claimant is to have no high production demands. The claimant can perform simple routine repetitive tasks with simple type job instructions. The claimant is to have no interaction with the general-public and only minimal contact with others at the work site.

(*Id.*, p. 20). Consequently, the ALJ found Plaintiff unable to perform her past relevant work as a bagger. (*Id.*, p. 25).

At the final step, the ALJ considered Plaintiff's age (31 as of May 1, 2014), education (completed high school), work experience, and RFC, and based on the impairments present since May 1, 2014, found there were jobs that existed in significant numbers in the national economy that Plaintiff counsel perform. (*Id.*). In

---

[3] By finding medical improvement, the ALJ then proceeds to the sixth step and skips step five. 20 C.F.R. § 404.1594(f)(4).

support, the vocational expert identified three representative occupations an individual with Plaintiff's age, education, work experience and RFC could perform:

    (1) general laborer, DOT 909.687-014, heavy, SVP 2;

    (2) hand packager, DOT 920.587-018, medium, SVP 2; and

    (3) small product assembly, DOT 739.687-030, light, SVP 2.

(*Id.*, p. 26).[4] The ALJ concluded Plaintiff's disability ended on May 1, 2014, and Plaintiff has not become disabled again since that date. (*Id.*).

## II.   Analysis

Plaintiff's appeal presents the following issue: whether Plaintiff's additional records provide a basis for remanding this action under Sentence Six, 42 U.S.C. 405(g).

### A.   Standard of Review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper

---

[4] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode*, 966 F.3d 1277, 1280 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that "the evidence preponderates against" the agency's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### B.   New Evidence

The issue here is whether new evidence not considered by the agency and instead submitted for the first time to this Court provides a basis for remanding this action under Sentence Six, 42 U.S.C. 405(g). Plaintiff submits the following: (1) her own statements allegedly contradicting prior statements concerning her husband and her "representative" Joseph Imperial and statements of her present condition; (2) a

medical record from Karen Woods, Psychiatric Mental Health Nurse Practitioner dated January 17, 2020; (3) lists of medications dated January 1, 2019; and (4) an April 13, 2020 discharge care plan and home medication list from Park Royal Hospital. (Doc. 31, pp. 5-8; Doc. 33, pp. 1-8).

"Generally, a claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council." *Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 857 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.900(b), 404.970(b) (2016)). But new evidence presented to the Court and not to the administrative agency must be considered under a Sentence Six analysis. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Sentence Six remands are "entirely different" from remands to address agency error under Sentence Four. *Id.* at 1267. Sentence Six presents a federal court "with the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id.* (quoting 42 U.S.C. § 405(g)).

So to prevail, a claimant must establish: "'(1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result and (3) there is good cause for the failure to submit the evidence at the administrative level.'" *Enix*

*v. Comm'r of Soc. Sec.*, 461 F. App'x 861, 863 (11th Cir. 2012) (internal quotations omitted) (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)); *see also Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (citation omitted) (finding same requirements to warrant a remand under Sentence Six).

Generally, new evidence must also "relate to the period on or before the date of the administrative law judge's ('ALJ') decision. . . . Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefits from a new application, but it is not probative of whether a person is disabled during the specific period under review." *Enix*, 461 F. App'x at 863 (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). But in cessation-of-benefit cases, the new evidence must relate to a date on or before the cessation date. *See Rosenlund v. Astrue*, No. 8:08-CV-1457-T-TBM, 2009 WL 3053698, *5 (M.D. Fla. Sept. 18, 2009) (holding the date of cessation and not the date of the administrative hearing or the ALJ's decision is the relevant date in a cessation case); *Simone v. Astrue*, No. 3:10-CV-509-J-TEM, 2011 WL 4005902, *5 (M.D. Fla. Sept. 9, 2011), *aff'd sub nom. Simone v. Comm'r of Soc. Sec. Admin.*, 465 F. App'x 905 (11th Cir. 2012) (holding same). Here, Plaintiff must show the evidence she presented to the Court is new, noncumulative, material and relevant to the time period on or before May 1, 2014, the cessation date.

With this standard in mind, the Court considers the evidence presented by Plaintiff in her memorandum and supplemental submissions under a Sentence Six analysis.

*Statements in the Memorandum*

In her memorandum, Plaintiff asserts that her "representative" Joseph Imperial promised Plaintiff if she made her husband "look bad" before the ALJ, she would win her case. (Doc. 31, p. 1). Mr. Imperial "wrote that the reason she left was Frank [her husband] mental abused me [sic] and took all my money . . . [and] does crack and abused me." (*Id.*). But Plaintiff claims all of these statements are not true. (*Id.*). She now claims her husband is a "great person" who "always looked out" for her and helped her. (*Id.*). And actually it was Joseph Imperial who took all her money, took her food stamps, and mentally and physically abused her. (*Id.*, pp. 1-2). Plaintiff explains that her husband told the ALJ he would always take care of her and he does. (*Id.*).

Any evidence of her husband's abuse or, on the flip side, her husband taking care of her is not new or noncumulative. Indeed, at the December 19, 2017 hearing, after inquiry by the ALJ, Plaintiff requested that her husband mainly speak for her. (Tr, pp. 179-180). Her husband testified that he takes care of Plaintiff and is the only one willing to do so. (*Id.*, pp. 184-185). Plaintiff also testified her husband takes care of her all of the time. (*Id.*, p. 188). The ALJ noted this testimony in his decision. (*Id.*,

p. 21). And the ALJ also repeatedly noted the history of domestic violence claims concerning Plaintiff and her husband, including mention of his crack cocaine use. (*Id.*, pp. 19, 22, 23). Based on the record, the Court finds remand for Plaintiff to correct her statements to the ALJ concerning her husband does not present new or noncumulative evidence and therefore a remand under Sentence Six for this information is not warranted. *See Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861, 863 (11th Cir. 2012)

Plaintiff also explains her present situation. (Doc. 31, p. 2-3). She indicates she has panic attacks, her bipolar disorder interferes with her everyday life, she does not want to leave the house, she is on several medications, she is not mentally fit, and cannot work. (*Id.*). But Plaintiff has not shown that her present situation relates to a time period on or before May 1, 2014. Even though this evidence may indicate Plaintiff's condition has deteriorated since May 1, 2014—the date the agency found her disability ceased—evidence of deterioration of any previously considered condition may entitle Plaintiff to benefits when filing a new application but is not probative of whether Plaintiff's previous medical condition had improved and she was no longer disabled as of May 1, 2014. *Id.* Therefore, a remand under Sentence Six based on these statements is not warranted.

*Medical Records, Lists of Medications, Discharge Plan from Park Royal Hospital*

As previously discussed, Plaintiff requests the Court consider: (1) a medical record from Karen Woods, Psychiatric Mental Health Nurse Practitioner dated January 17, 2020; (2) lists of medications dated January 1, 2019; and (3) an April 13, 2020 discharge care plan and home medication list from Park Royal Hospital. (Doc. 31, pp. 5-8; Doc. 33, pp. 1-8). Critically, these new records must relate to Plaintiff's condition on or before May 1, 2014, the cessation date. *Rosenlund*, 2009 WL 3053698, at *5.

In a letter dated January 17, 2020, nurse practitioner Karen Woods stated she treated Plaintiff in February 2019. (Doc. 31, p. 5). She noted Plaintiff is diagnosed with schizoaffective disorder, bipolar type, generalized anxiety disorder, and insomnia (*Id.*). Ms. Woods found Plaintiff "has a complex mental health history, including multiple psychiatric hospitalizations and symptomology prior to the age of twenty." (*Id.*). Ms. Woods also found Plaintiff's need for medication ongoing and listed various mental health issues. (*Id.*). In her clinical opinion, Ms. Woods found Plaintiff unable to maintain employment, even with an accommodation. (*Id.*).

The next exhibit, a medication list from a pharmacy, includes a number of medications with dispense dates between May 13, 2019 through January 13, 2020. (Doc. 31, pp. 6-8). And the last exhibit, the Discharge Care Plan and Home Medications record, indicate an involuntary admission date of April 5, 2020 and a

discharge date of April 13, 2020 to Park Royal Hospital. (Doc. 33 , pp. 1, 3). Plaintiff was diagnosed with schizoaffective disorder, bipolar type, hypothyroidism unspecified, and obesity unspecified. (*Id.*, p. 2). The discharge plan included a medication list and on an apparently self-created crisis safety plan for coping with stressors. (*Id.*, p. 7).

Even if these additional medical records could satisfy the new, noncumulative, material, and good cause factors to warrant a Sentence Six remand, plainly absent from all of these records is any indication that this new evidence relates to a date on or before the cessation date of May 1, 2014, *See Rosenlund*, 2009 WL 3053698, at *5. At the earliest, Ms. Woods' letter relates to February 2019, nearly five years after the cessation date. (Doc. 31, p. 5). Likewise, the earliest date on the medication list, May 13, 2019, is again five years after the cessation date. (*Id.*, pp. 6-8). And similarly, the Discharge Care Plan and Home Mediations report relates to April 5, 2020 through April 13, 2020, nearly six years after the cessation date. Plaintiff has failed to show that this new evidence relates to a period on or before her cessation date. Therefore, the Court finds a Sentence Six remand for consideration of this evidence is not warranted.

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and further

finds that remand pursuant to Sentence Six is not warranted.

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's request to remand this action pursuant to Sentence Six is **DENIED**. The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on November 30, 2020.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE